eFiled in the Office of Clerk of Court, Orange County Florida 2011 Sep 15 08:44 AM Lydia Gardner

IN THE CIRCUIT COURT OF NINTH JUDICIAL CIRCUIT IN AND FOR ORANGE COUNTY FLORIDA

**JOHN PRATT, derivatively on behalf of American Leisure Group, Limited,**

          **Plaintiff,**

v.

**AMERICAN LEISURE GROUP, LIMITED, DAVID MACE, and ROBERT KRAWCZYK,**

          **Defendants.**

_____/

CASE NO.: 2011-CA-010071-O

**COMPLEX BUSINESS LITIGATION COURT**
Division 32

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, JOHN PRATT, derivatively on behalf of American Leisure Group, Limited ("Plaintiff"), sues Defendants AMERICAN LEISURE GROUP, LIMITED ("ALG"), DAVID MACE ("Mace") and ROBERT KRAWCZYK ("Krawcyk") (collectively, the "Defendants") and alleges:

## INTRODUCTION

1.  This is a derivative action by Plaintiff, a shareholder of ALG, to recover millions of dollars of losses suffered by ALG as a result of the extreme neglect and conscious disregard of ALG's interests committed by ALG's

Executive Director Mace (who was later ALG's Chairman) and Krawcyk who was the chief financial officer of the ALG Group (defined below).

2.      While serving as a member of the audit committee for ALG (the "ALG Audit Committee") and subsequently as its Executive Chairman, Mace helped oversee ALG's financial operations and allowed tens of millions of dollars to be wasted and misappropriated by third parties to the detriment of ALG and its shareholders.  As the chief financial officer of the ALG Group, Krawcyk also failed to prevent such waste and misappropriations.

3.      Plaintiff, on behalf of ALG and all ALG shareholders, now seeks damages from Mace and Krawcyk for their derelict oversight.

## JURISDICTION, PARTIES, & VENUE

4.      This is an action for damages that exceed $15,000.00, exclusive of costs, interests and attorneys' fees.

5.      ALG was a company organized and existing under the laws of the British Virgin Islands, with its principal business offices in Orange County, Florida.

6.      ALG is no longer a functioning company, no longer has any employees, and is essentially a defunct entity. Accordingly, any demand to bring this action directed towards ALG's board of directors would be impractical, unreasonable, and futile.

7.     At all material times, Plaintiff was a shareholder of ALG.

8.     Mace is a resident of the United Kingdom, was formerly a Non-Executive Director, and eventually served as the Executive Chairman of ALG. Mace also served on the ALG Audit Committee, and otherwise conducted business in Florida through ALG's Florida subsidiaries.

9.     Krawcyk is or was a resident of Orlando, Florida, was formerly the Chief Financial Officer of the ALG Group from approximately August 2007 through December 31, 2007 and again from approximately April 15, 2008 through December 28, 2008, and otherwise conducted business in Florida through ALG's Florida subsidiaries.

10.    Venue is proper in Orange County, Florida pursuant to Section 47.011, Florida Statutes, as the causes of action alleged in this Complaint accrued in Orange County, Florida and ALG's business operations were located in Orange County, Florida.

## GENERAL ALLEGATIONS

**A.     The ALG Group and the Offering.**

11.    ALG was a company established to create and operate an integrated hospitality management, vacation club, resort development, and travel services group (the "ALG Group"). More specifically, ALG was to acquire, construct, develop, and operate vacation resorts.

12. ALG was formed in May 2007.

13. In order to raise capital to pursue its business ventures, ALG completed an initial offering on the Alternative Investment Market of the London Stock Exchange on August 13, 2007 (the "Offering").

14. The proceeds of the Offering, like all of ALG's capital, were to be used for the purposes of the ALG Group's businesses, such as to develop the ALG Group's resort portfolio, reduce the ALG Group's debt, expand the ALG Group's sales and marketing networks, develop additional business segments, and provide working capital to the ALG Group.

15. Accordingly, in connection with the Offering, the ALG Group acquired several entities which owned or controlled a portfolio of various resort properties in Central Florida.

**B.     The Tierra del Sol Project.**

16. One of the resort properties that the ALG Group acquired simultaneously with the Offering was the Sonesta at Tierra del Sol Resort (the "Tierra del Sol Project"). The Tierra del Sol Project was located close to Walt Disney World and, at the date of the offering, was comprised of approximately 972 vacation townhome and condominium units.

4

17.   As of the time of the Offering, the ALG Group had already entered into contracts with purchasers with respect to over 700 of the units in the Tierra del Sol Project.

18.   Previously, in December of 2006, two future affiliated companies of the ALG Group, TDS Town Homes (Phase 1), LLC and TDS Town Homes (Phase 2), LLC (collectively, "TDS"), had entered into a construction loan agreement with Regions Bank for the purposes of providing sufficient funds to construct and developed the first phase of town homes at Tierra del Sol Project (the "Loan").

19.   Initially the Loan provided TDS with the ability to borrow approximately $12 million to construct and develop some of the town home units on the Tierra del Sol Project.

20.   In November of 2007, after TDS had become part of the ALG Group, the Loan was enlarged to allow the ALG Group to borrow up to $28 million for the construction of the first 96 town homes on the Tierra del Sol Project.

21.   ALG and various affiliated entities in the ALG Group ultimately became guarantors on the Loan.

22.   The ALG Group had previously retained Resorts Construction LLC ("Resorts Construction") to work on various ALG Group projects, including Tierra del Sol.

23.    Alan Meyer ("Meyer") was the officer for Resorts Construction responsible for all of Resorts Construction's financial matters.

**C.    The Failures of Mace and Krawcyk.**

24.    Mace served as a Non-Executive Director of ALG from approximately August 13, 2007 through December 31, 2007, and served as Executive Chairman of ALG from approximately January 1, 2008 through January 28, 2009.

25.    At all times material, Mace also served as a member of the ALG Audit Committee.

26.    As a member of the Audit Committee, Mace had the duty and the responsibility to act in the best interest of ALG.  Specifically, Mace had the specific responsibility for the oversight and supervision of all financial reporting and disclosure, accounting functions, audit functions and procedures, and internal controls associated with monitoring the finances of the ALG Group, as well as for acquiring the resources and expertise necessary to ensure these functions were competently performed for ALG.

27.    Instead of acting in the best interest of ALG, Mace completely neglected his duty and acted with conscious disregard for the best interest of ALG, allowing tens of millions of dollars of the ALG Group's funds to be wasted and misappropriated.

6

28.    Shortly after the Offering, Krawcyk was retained by ALG to act as chief financial officer of the ALG Group and its related subsidiaries.

29.    Instead of acting in the best interest of ALG, Krawcyk completely neglected his duty and acted with conscious disregard for the best interest of ALG, allowing tens of millions of dollars of the ALG Group's funds to be wasted and misappropriated.

30.    Among other problems, Mace and/or Krawcyk:

    a.    failed to ensure that a reasonably competent accounting department was employed and utilized by the ALG Group.

    b.    failed to ensure required reports were filed with federal agencies;

    c.    failed to implement adequate internal controls or procedures to monitor costs and the use of the ALG Group's funds;

    d.    failed to ensure that any reasonable audit functions or procedures were effectuated by the ALG Group;

    e.    failed to make any reasonable inquiries to reconcile the monies being sent to Resorts Construction;

    f.    failed to address the significant additional overhead that was taken on immediately after the Offering (despite the board curtailing some of the operations); and

7

g.     actively sought to employ Meyer despite having knowledge that monies had previously been overpaid and/or misappropriated by Meyer via Resorts Construction.

31.    For example, Mace's and Krawcyk's neglect allowed the ALG Group's accounting department and other newly created departments to employ numerous unneeded and unqualified employees, pay exorbitant salaries and bonus, and otherwise excessively waste the ALG Group's funds – all without any reasonable internal controls to enable ALG Group to prepare accurate monthly management accounts, monitor its costs, overheads and projects as well as its future cash requirements on an accurate basis.

32.    Mace and Krawcyk had full knowledge or, based on their respective positions at ALG, should have had full knowledge that millions of dollars were simply being wasted by the ALG Group's bloated and incompetent departments.

33.    Had Mace been competently performing his duty as Director, Chairman, and a member of the ALG Audit Committee, and Krawcyk as CFO of the ALG Group, millions of dollars of the ALG Group's funds would not have been squandered.

34.    More damaging to the ALG Group than the Defendants' inability to structure a functioning accounting department was their failure to oversee

construction expenditures and construction draws, which allowed tens of millions of dollars to be misappropriated from the ALG Group.

35.    As a result of this failure in oversight and supervision, from August of 2007 through the summer of 2008, Meyer submitted false, misleading, and vastly overstated invoices to the ALG Group for Resorts Construction's services.   In total, Meyer submitted untold millions of dollars in false and misleading invoices to the ALG Group for Resort Construction's "services," including approximately $13 million for materials that were simply never purchased by Resorts Construction.  Neither Mace nor Krawcyk made any attempt to reconcile or inspect any of the material that this sum supposedly represented.

36.    Due to Mace's and Krawcyk's extreme neglect and complete failure to ensure that appropriate internal controls were implemented, the ALG Group paid these false and misleading invoices and Meyer was able to abscond with millions of dollars of the ALG Group's funds.

37.    Had Mace and Krawcyk been acting as a reasonably competent Director, Chairman, and a member of the ALG Audit Committee and Krawcyk as a competent CFO, Meyer would not have been able to misappropriate these funds.

38.    In addition to their failure to supervise the funds of the ALG Group, Mace and Krawcyk also failed to ensure that proper monitoring was occurring regarding the draws on the Loan.

9

39.    Like most construction loans, the Loan was structured to allow TDS to draw down on the Loan in accordance with the progress of the construction of the Tierra del Sol Project, as documented by information submitted to Regions Bank by Resorts Construction.

40.    Meyer and Mace were responsible for submitting draw requests to Regions Bank and for overseeing the use of the Loan proceeds.

41.    Throughout the life of the Loan, Meyer submitted numerous false and misleading draw requests to Regions Bank and to ALG to significantly overdraw the Loan, and utilized these funds as well as additional funds paid directly by ALG for his own personal benefit rather than for construction of the Tierra del Sol Project.

42.    As a Director, Chairman, and a member of the ALG Audit Committee, and Krawcyk as the ALG Group's CFO, Mace and Krawcyk had the duty and responsibility to monitor the administration of the Loan at the level of a reasonably competent director and CFO and the duty to ensure that sufficient internal controls were in place.

43.    Mace and Krawcyk had full knowledge or, based on their positions with ALG, should have had full knowledge of Meyer's actions in absconding with the monies.

44.    Upon information and belief, Mace was complicit in Meyer's scheme in order to gain favor with Meyer in hopes of securing future employment with Meyer.

45.    Had Mace been acting as a reasonably competent Director, Chairman, and member of the ALG Audit Committee, and Krawcyk as reasonably competent CFO , Meyer would not have been able to misappropriate the monies.

46.    The ALG Group attempted to bring new lenders in to finance the construction of the Tierra del Sol Project.   However, each new lender was concerned with how the previous loan money and monies paid directly by ALG had been appropriated.

47.    Regions Bank has since foreclosed on the Loan and is currently seeking deficiency judgments against certain members and officers of the ALG Group.

48.    As a result of Meyer's misappropriation of the Loan proceeds, and other monies of the ALG Group, the Tierra del Sol Project was significantly damaged and the ALG Group lost over $40 million in deposits of purchasers already under contract.

49.    Moreover, the Defendants' failure to ensure that proper internal controls were implemented and failure to supervise the ALG Group's finances

ultimately led to significant damage to TDS – one of the ALG Group's major assets.

50.    Due to the nature of this scheme to defraud ALG's shareholders and due to the complete neglect of the Defendants, the first indications of Meyer's scheme did not come to light until late May of 2008, when certain subcontractors were not paid by Resorts Construction even though the Loan had been drawn down to pay these subcontractors.

51.    As a direct result of the Defendants' wrongful acts and omissions, ALG and its shareholders have suffered significant damages, including without limitation, the loss of millions of dollars of the ALG Group's funds, damage to TDS and its assets, and other direct and consequential damages that will be shown by the evidence.

52.    All general and statutory conditions precedent to bringing this action have been performed, have occurred, have been waived, or have otherwise been excused by the Defendants' actions.

## COUNT I – BREACH OF FIDUCIARY DUTY

53.    This is a shareholder derivative action against Mace and Krawcyk for breach of fiduciary duty.

54.    Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 52 above.

12

55. At all times material, Mace held positions in which he owed fiduciary duties to ALG and all shareholders of ALG.

56. At all times material, Krawcyk held positions in which he owed fiduciary duties to ALG and all shareholders of ALG.

57. At all times material, ALG and all shareholders of ALG reposed trust in Mace and Mace undertook that trust.

58. At all times material, ALG and all shareholders of ALG reposed trust in Krawcyk and Krawcyk undertook that trust.

59. As a result of this fiduciary relationship, the shareholders of ALG were induced to rely on Mace and Krawcyk.

60. As set forth above, Mace and Krawcyk breached their fiduciary duties by allowing the operations and the business affairs of the ALG Group to be run in a manner which was entirely reckless, negligent, and with conscious disregard for the best interest of ALG and its shareholders, including Plaintiff.

61. Specifically, as explained above, Mace and Krawcyk allowed and/or were complicit in the waste and misappropriation of millions of dollars of the ALG Group's funds and the damage to TDS and its assets.

62. As a direct and proximate result of the breaches of fiduciary duty committed by Mace and Krawcyk, Plaintiff, and all other shareholders of ALG have been damaged.

13

**WHEREFORE**, Plaintiff demands judgment on his own behalf and on behalf of all other shareholders of ALG against Mace and Krawcyk for damages, interest, the costs of this action, and any such further relief as this court may deem just and equitable, and reserving the right to seek punitive damages upon a proper showing to the Court and attorneys' fees if appropriate.

<u>COUNT II – NEGLIGENCE</u>

63.     This is a shareholder derivative action against Mace and Krawcyk for negligence.

64.     Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 52 above.

65.     At all material times, Mace owed a duty of care to ALG and its shareholders to act in ALG's best interests and to exercise reasonable care in connection with his duties as a Director and as Chairman of ALG, as well as his duties as a member of the ALG Audit Committee.

66.     At all material times, Krawcyk owed a duty of care to ALG and its shareholders to act in ALG's and the ALG Group's best interests and to exercise reasonable care in connection with his duties as CFO of the ALG Group.

67.     As set forth above, Mace and Krawcyk breached their respective duties of care to ALG by allowing the operating and business affairs of the ALG Group to be run in a manner which was entirely reckless, negligent, and with

14

conscious disregard for the best interest of ALG and its shareholders, including Plaintiff.

68.     Specifically, as explained above, Mace and Krawcyk allowed, and/or were complicit in the waste and misappropriation of millions of dollars of the ALG Group's funds and the damage to TDS and its assets.

69.     As a direct and proximate result of the negligence of Mace and Krawcyk, ALG and its shareholders have been damaged.

**WHEREFORE**, Plaintiff demands judgment on his own behalf and on behalf of all other shareholders of ALG against Mace and Krawcyk for damages, interest, the costs of this action, and any such further relief as this court may deem just and equitable, and reserving the right to seek punitive damages upon a proper showing to the Court and attorneys' fees if appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury for all issues so triable.

Dated: September 15, 2011         **MORGAN & MORGAN, P.A.**

                                 */s/ Benjamin A. Webster*
TUCKER H. BYRD
Florida Bar No. 381632
JAMES S. BYRD, JR.
Florida Bar No. 539104
DAMIEN H. PROSSER
Florida Bar No. 0017455
BENJAMIN A. WEBSTER
Florida Bar No. 0045167
20 North Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone (407) 420-1414
Fax: (407) 418-2048

*Attorneys for the Plaintiff*